THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES CARROLL HERRON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BELLINGHAM, a Municipal Corporation; MICHAEL SCANLON and "JANE DOE" SCANLON, his wife,<br><br>Defendants. | CASE NO. C12-1933-JCC<br><br>ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 12, 24). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendants' motion (Dkt. No. 12) and DENIES Plaintiff's motion (Dkt. No. 24) for the reasons explained herein.

I.   **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see* Fed. R. Civ. P. 50(a) (court may grant judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue"). The party moving for summary judgment has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its

burden, the burden shifts to the non-moving party to designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, a court draws all inferences in the light most favorable to the party opposing the motion. *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir. 1980).

## II.   FOURTH AMENDMENT CLAIM AGAINST MICHAEL SCANLON

### A.   Background

On December 16, 2010, the Superior Court of Washington for Whatcom County issued an ex parte restraining order against Plaintiff Charles Herron. (Dkt. No. 16 Ex. A at 7.) The order restrained Mr. Herron from, *inter alia,* "disturbing the peace" of his wife, Juliette Daniels. (*Id.* at 9.) The order bore the following legend on its front page: "Violation of [this] Restraining Order . . . with actual knowledge of its terms is a criminal offense under Chapter 26.50 RCW and will subject the violator to arrest. RCW 26.09.060." (*Id.* at 7.) Mr. Herron was served with the restraining order at 6:45 p.m. that day. (*Id.* Ex. B at 11.)

The next day, Ms. Daniels went to the Bellingham police department to complain about three phone calls she had received from Mr. Herron since the issuance of the restraining order. (Dkt. No. 16 at 2–3 ¶¶ 6, 12.) Ms. Daniels showed the restraining order to Defendant Michael Scanlon, a Bellingham police officer, and played for him the three voicemail messages Mr. Herron had left her. (*Id.* at 2–3 ¶¶ 7, 12.) According to Officer Scanlon's case report:

> [Ms.] Daniels [] stated that she and her husband have started the process of "dissolving" their marriage. She stated that [Mr.] Herron [] moved out of the house as of yesterday, and at [6:45 p.m.] he was served his copy of the Temporary Restraining Order. She stated that last night two calls came into her cell phone from [Mr.] Herron[] . . . and one today . . . .
>
> [In] [t]he call from [last night at 7:52 p.m., Mr.] Herron . . . stated that he [had] just been served with the order . . . but had not yet read it and didn't know what all was inside of it. He stated that he wanted to say goodnight to the kids, and asked that [Ms.] Daniels [] call back if she could.

Case 2:12-cv-01933-JCC   Document 30   Filed 07/18/13   Page 3 of 14

> [In] [t]he call [at 7:56 p.m., Mr.] Herron . . . wanted [Ms.] Daniels [] to know that he was now staying at the Bellwether and that he had just come from the Chrysalis.
>
> [In] [t]he call [at 10:48 a.m. today, Mr.] Herron . . . ask[ed] about some of his property inside the residence as well as some Christmas presents that he wanted to discuss for their kids.

(Dkt. No. 16 Ex. D at 15.) In an affidavit submitted with Defendants' motion for summary judgment, Officer Scanlon recounts, "During my meeting with Ms. Daniels, I observed that she was very upset about the phone calls from Mr. Herron," and, "I recall Ms. Daniels stating that she felt harassed," that "the repeated phone calls were a 'power play' on Mr. Herron's part" and "an attempt . . . to be 'controlling,'" that "Mr. Herron notified her he was staying at an expensive hotel to spite her," and that "he was staying at the hotel to 'drain' their bank account and he knew this would upset her." (Dkt. No. 16 at 3 ¶¶ 16–17; *see* Dkt. No. 27 Ex. A at 9.) When asked in deposition whether Ms. Daniels told Officer Scanlon that Mr. Herron had disturbed her peace, Ms. Daniels replied, "I don't know if I used those exact words but that was essentially why I was there." (Dkt. No. 23 Ex. D at 2.)

Later that day, Officer Scanlon contacted Mr. Herron at the Hotel Bellwether. According to the officer's report:

> I advised [Mr. Herron] why I was there and explained that he had called and left voice mails to his wife in violation of the order. He admitted to the calls but stated that he hadn't read the order to completion, and had no idea he had done anything wrong. He explained that he was terribly sorry for having violated the order.
>
> I advised him that based on the totality of the circumstances, I would have to arrest and book him for the violations of the order.

(Dkt. No. 16 Ex. D at 15.) Officer Scanlon arrested Mr. Herron for violating the restraining order and Washington Revised Code § 26.50.110, which criminalizes certain restraining order violations. (Dkt. No. 16 at 5 ¶ 25 & Exs. C–D at 12–13.) In Officer Scanlon's *post hoc* affidavit, he opines, "[T]here was probable cause to arrest Mr. Herron for disturbing Ms. Daniels' peace"

ORDER GRANTING SUMMARY JUDGMENT
FOR DEFENDANTS
PAGE - 3

in violation of the restraining order. (Dkt. No. 16 at 5 ¶ 27; *see* Dkt. No. 27 Ex. A at 8 ("Q. What term of the order did you determine [Mr. Herron] had violated? A. Disturbing the repose of Ms. Daniels.").)

Mr. Herron spent three nights in jail before being released on bond. (Dkt. No. 1 at 3 ¶ 4.8.) The City of Bellingham subsequently dismissed the charges against Mr. Herron for lack of sufficient evidence to prove them beyond a reasonable doubt. (Dkt. No. 15 Ex. D at 25.)

Mr. Herron filed the instant 42 U.S.C. § 1983 suit for damages against Officer Scanlon and the City of Bellingham. In his first cause of action, he alleges that Officer Scanlon violated his Fourth Amendment right to be free from unreasonable seizures by arresting him without probable cause. (Dkt. No. 1 § V.) Officer Scanlon moves for summary judgment on this claim. Mr. Herron cross-moves for summary judgment as to Officer Scanlon's liability for the alleged Fourth Amendment violation (but not damages).

**B.     Discussion**

**1.     The Fourth Amendment and Qualified Immunity**

The Fourth Amendment protects people against "unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless arrest is "unreasonable" and thus unconstitutional if it is not supported by probable cause—*i.e.*, if "the facts and circumstances within [the arresting officer's] knowledge are [not] sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011). "[P]robable cause does not exist where a police officer arrests an individual for activities that do not constitute a violation of the law." *Beier v. City of Lewiston*, 354 F.3d 1058, 1065–66 (9th Cir. 2004).

Even if a plaintiff can show the violation of a constitutional right, "[q]ualified immunity shields federal and state officials from money damages . . . [if] the right was [not] 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In the context of an arrest, "the

ORDER GRANTING SUMMARY JUDGMENT
FOR DEFENDANTS
PAGE - 4

question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause" to arrest the suspect. *Rosenbaum*, 663 F.3d at 1078; *see id.* at 1076 (if "it is *reasonably arguable* that there was probable cause for arrest—that is, [if] reasonable officers could disagree as to the legality of the arrest[, then] the arresting officer is entitled to qualified immunity").

### 2. Washington Law Governing Criminal Violations of Restraining Orders

Ms. Daniels' restraining order was issued under Washington Revised Code § 26.09.060. (Dkt. No. 16 Ex. A at 7.) Several provisions of Washington law bear on the issue of which term(s) of a restraining order a person must violate in order to commit a crime under § 26.50.110. First, § 26.09.060(7) provides:

> Restraining orders issued under [§ 26.09.060] restraining the person from [*inter alia*] *molesting or disturbing another party* . . . shall prominently bear on the front page of the order the legend: VIOLATION OF THIS ORDER WITH ACTUAL NOTICE OF ITS TERMS IS A CRIMINAL OFFENSE UNDER CHAPTER 26.50 RCW AND WILL SUBJECT A VIOLATOR TO ARREST.

*Id.* (emphasis added). This provision suggests that, as long as the order restrains the person from disturbing the protected party, the person is on notice of the order,[1] and the person in fact disturbs the protected party, the person has committed a crime under chapter 26.50. Consistent with § 26.09.060(7), § 26.50.110(2) provides:

> A peace officer shall arrest without a warrant and take into custody a person whom the peace officer has probable cause to believe has *violated an order* issued under . . . chapter . . . 26.09 . . . *that restrains the person* . . . , if the person restrained knows of the order.

---

[1] The Washington Court of Appeals has held that, "despite the actual notice language of RCW 26.09.0[6]0([7])[,] . . . [a] TRO issued under RCW 26.09 can serve as a basis for criminal prosecution under RCW 26.50 with general knowledge as the required intent element." *State v. Van Tuyl*, 133 P.3d 955, 956 (Wash. Ct. App. 2006). In other words, only knowledge of the order—not "actual notice of its terms"—is required. *See id.* at 959–60.

ORDER GRANTING SUMMARY JUDGMENT
FOR DEFENDANTS
PAGE - 5

*Id.* (emphasis added). This provision suggests that, to commit a crime (for which arrest is required), a person need only violate an order that restrains him in any way—including, for example, by enjoining him from disturbing the protected party's peace. This provision is consistent with what § 26.50.110(1) *used to say*: Prior to July 22, 2007, § 26.50.110(1) provided that "a *violation of the restraint provisions* [of an order issued under chapter 26.09] . . . is a gross misdemeanor . . . ." *Id.* (emphasis added). Thus, the Washington Court of Appeals, in a 2006 case interpreting the prior version of § 26.50.110(1), stated:

> The elements of violating a restraining order [in criminal violation of § 26.50.110(1)] are: (1) a[] [valid restraining] order . . . ; (2) knowledge of the order by the person to be restrained; and (3) a *violation of the restraint provisions*.

*Van Tuyl*, 133 P.3d at 960 (emphasis added).

However, the version of § 26.50.110(1) operative at the time of Mr. Herron's arrest (and operative today) provides in relevant part:

> (a) Whenever an order is granted under . . . chapter . . . 26.09 . . . , and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor . . . :
>
> (i) The restraint provisions prohibiting *acts or threats of violence against, or stalking of*, a protected party, or restraint provisions *prohibiting contact* with a protected party . . . .

*Id.* (emphasis added). The text of the current version suggests that a person must violate a specific kind of restraint provision enumerated under subsection (1)(a) in order to commit a crime—not just *any* restraint provision, as the former § 26.50.110(1) provided. (This is Mr. Herron's interpretation.) Yet according to the Washington Supreme Court, "the former and [current] versions of the statute are substantively the same." *State v. Bunker*, 238 P.3d 487, 493 (Wash. 2010);[2] *see State v. Wofford*, 201 P.3d 389, 393 n.5 (Wash. Ct. App. 2009) ("[T]he

---

[2] The legislature amended § 26.50.110(1) again in 2009, but that amendment is immaterial for purposes of this case.

ORDER GRANTING SUMMARY JUDGMENT
FOR DEFENDANTS
PAGE - 6

reason the legislature did not expressly address retroactivity in the 2007 amendment is because there was no substantive change in the law."). This case law implies that the elements of the crime of violating a restraining order under § 26.50.110(1) have not changed since the Washington Court of Appeals discussed them in *Van Tuyl*, and that all that is required—consistent with § 26.50.110(2)—is the violation of *any* restraint provision. *See Van Tuyl*, 133 P.3d at 957 ("Under RCW 26.50.110(1), violation of a protection order issued under chapter 26.50 or '26.09' is a gross misdemeanor."); *Wofford*, 201 P.3d at 393 (recounting the legislature's summary of § 26.50.110(1) as follows: "a violation of a . . . restraining order that does not constitute a class C felony is a gross misdemeanor" and "a police officer shall arrest any person who violates the restraint or exclusion provision of a court order relating to domestic violence") (quotation marks and indications of alteration omitted). Suffice it to say, this morass of statutes and case law provides little clarity to police officers on specifically *which* provision(s) (or kinds of provisions) of a restraining order a person must violate in order to commit the crime of violating a restraining order under § 26.50.110(1).

### 3. Analysis

Mr. Herron argues that, even if he did violate the provision of Ms. Daniels' restraining order prohibiting him from disturbing her peace, violating that provision was not a crime under § 26.50.110 because § 26.50.110(1) does not list no-disturbing-the-peace provisions as provisions whose violation constitutes a crime. Rather, as discussed, it lists "restraint provisions prohibiting *acts or threats of violence against, or stalking of*, a protected party, or restraint provisions *prohibiting contact* with a protected party." Since Ms. Daniels' restraining order did not contain a no-contact provision, and since Mr. Herron's phone calls clearly did not constitute acts or threats of violence against, or stalking of, Ms. Daniels, Mr. Herron argues that, as a matter of law, Officer Scanlon could not have had probable cause to believe that Mr. Herron had committed a crime by violating a restraining order provision enumerated under § 26.50.110(1).

As discussed *supra*, however, Mr. Herron's interpretation of § 26.50.110(1) is not the

only reasonable one. Equally reasonable in light of § 26.09.060(7), § 26.50.110(2), and the case law is the conclusion that a violation of *any* restraint provision is a crime under § 26.50.110(1). In other words, it was not clearly established at the time of Mr. Herron's arrest that a violation of a restraint provision not specifically listed under § 26.50.110(1) is *not* a crime under § 26.50.110. Mr. Herron's argument for summary judgment as a matter of law fails.

Assuming, then, that any violation of a restraint provision is a crime under § 26.50.110(1), the question for *Officer Scanlon's* motion for summary judgment is whether, viewing the evidence in the light most favorable to Mr. Herron, and "consider[ing] the nature and trustworthiness of the evidence of criminal conduct available to [Officer Scanlon]," *Beier*, 354 F.3d at 1064, "no reasonable officer could believe that [Mr. Herron's] conduct" disturbed Ms. Daniels' peace, *Rosenbaum*, 663 F.3d at 1079. Neither § 26.09.060 nor any other provision defines the term "disturbing the peace of the other party." A California case interpreting the identical phrase in California's domestic violence law is instructive:

> The ordinary meaning of "disturb" is "[t]o agitate and destroy (quiet, peace, rest); to break up the quiet, tranquility, or rest (of a person, a country, etc.); to stir up, trouble, disquiet." (Oxford English Dictionary Online (2d ed. 1989) <http://www.oed.com> [as of Apr. 24, 2009].) "Peace," as a condition of the individual, is ordinarily defined as "freedom from anxiety, disturbance (emotional, mental or spiritual), or inner conflict; calm, tranquil[]ity." (*Ibid.*) **Thus, the plain meaning of the phrase "disturbing the peace of the other party" . . . may be properly understood as conduct that destroys the mental or emotional calm of the other party.**

*In re Marriage of Nadkarni*, 93 Cal. Rptr. 3d 723, 733 (Cal. Ct. App. 2009) (bold emphasis added). The Court adopts this definition and, applying it, finds that a reasonable officer, based on the information Officer Scanlon had before him, could have concluded that Mr. Herron disturbed Ms. Daniels' peace with his phone calls and voicemail messages. According to the undisputed evidence, Ms. Daniels was and appeared upset when she reported the phone calls to Officer Scanlon. She told Officer Scanlon that she felt she was the victim of a "power play" by Mr. Herron and an attempt on his part to control her and to upset her by spending their money on an

expensive hotel. (Dkt. No. 16 at 3 ¶¶ 16–17; Dkt. No. 23 Ex. D at 1–2.) Mr. Herron submits no evidence that puts these asserted facts in dispute.[3] *See Peng v. Mei Chin Penghu*, 335 F.3d 970, 979–80 (9th Cir. 2003) ("where the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for this court to decide whether probable cause existed at the time [the officer] arrested [the suspect]"). A reasonable officer could have concluded, based on these undisputed facts, that Mr. Herron had destroyed Ms. Daniels' mental and emotional calm and thus had violated the no-disturbing-the-peace provision of the restraining order. Therefore, Officer Scanlon is entitled to qualified immunity on Mr. Herron's Fourth Amendment claim.

### III. SUPERVISORY LIABILITY CLAIM AGAINST CITY OF BELLINGHAM

In his second cause of action, Mr. Herron alleges that the City of Bellingham is liable for Officer Scanlon's asserted violation of Mr. Herron's constitutional rights because it "fail[ed] to properly train and supervise its police officers . . . to carefully review and determine what conduct is actually being restrained before arresting a citizen for violation of a temporary restraining order." (Dkt. No. 1 at 5 ¶¶ 6.5–6.6.) The City of Bellingham moves for summary judgment on this claim. The Court assumes for purposes of this claim that Officer Scanlon's arrest of Mr. Herron violated his constitutional rights (an issue the Court did not reach in the preceding section based on qualified immunity).

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691

---

[3] Mr. Herron argues that he "had no intent to disturb his wife, but was simply trying to sort out parenting details now that they were separated." (Dkt. No. 21 at 2; *see* Dkt. No. 22 at 2 ¶ 4 ("I did not intend to disturb my wife by . . . calling her on the telephone on December 16-17, 2010.").) But only "the evidence of criminal conduct available to the [officer]," *Beier*, 354 F.3d at 1064—not Mr. Herron's undisclosed intentions—are relevant to whether a reasonable officer could have concluded that Mr. Herron's calls disturbed Ms. Daniels' peace.

(1978)). "[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983" if the failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)) (second alteration in *Connick*). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360 (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)). Here, the City argues that summary judgment for it on Mr. Herron's supervisory liability claim is proper because (1) there is no evidence that the City was aware of, and deliberately indifferent to, a training need related to the investigation of restraining order violations, (2) there is no evidence of a "pattern of similar constitutional violations by untrained employees," *id.*, and (3) there is no evidence that any alleged training deficiency "*cause[d]* the constitutional violation at issue," *Harris*, 489 U.S. at 385 (emphasis added).

Mr. Herron fails to respond to the City's arguments by pointing to any such evidence. Instead, he submits (1) the Bellingham Police Department Policy Manual and (2) a 2009 memorandum from the Whatcom County Prosecuting Attorney, which was distributed to Bellingham police officers as a training bulletin, regarding "when people can be arrested for violations of No Contact Orders that occur outside of the presence of law enforcement officers." (Dkt. No. 23 Exs. E, F.) Mr. Herron argues:

> The . . . Policy Manual . . . contains no warnings about protecting the rights of the accused in domestic violence situations. It contains only warnings about protecting the rights of victims. It contains no language on when it is not legal to arrest a suspect, only language about when it is mandatory that an arrest be made.

(Dkt. No. 21 at 5.) Mr. Herron mischaracterizes the policy manual. The manual has a standalone section instructing officers that they "shall observe and comply with every person's clearly established rights under the United States and Washington Constitutions"—those of victims *and*

suspects. (Dkt. No. 23 Ex. E at 1.) And it explains that, under Washington Revised Code § 10.31.100, an officer "may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor *only* when the offense is committed in the presence of the officer," except under certain exceptions. (*Id.* (emphasis added).) The manual thus *does* contain language on when it is and is not legal to arrest a suspect. (Mr. Herron's statement in his opposition brief that the manual "makes no mention of RCW 10.31.110" (Dkt. No. 21 at 2 n.10) is thus wrong.) In any event, nothing in the policy manual constitutes evidence that the City was aware of, and deliberately indifferent to, a training need related to investigations of restraining order violations, a pattern of Fourth Amendment violations by untrained employees, or a constitutional violation caused by any training deficiency.

Nor does the Prosecuting Attorney's memorandum provide such evidence. Mr. Herron complains that, "[e]ven when the police department was advised by the county prosecutor that making an arrest in a case such as this could subject them to liability, the police department did not amend its policy manual to reflect this concern." (Dkt. No. 21 at 5.) But the department turned the memorandum into a *training bulletin*. (Dkt. No. 23 Ex. F.) If this document evidences anything, then, it is the City's deliberate *care* to ensure that its officers *were* trained. In any event, the memorandum addresses the issue of when, under *Washington* law, an officer may make a warrantless arrest for a restraining order violation committed outside the officer's presence. The memorandum is thus irrelevant to Mr. Herron's *federal* constitutional claim that the City failed to train its officers to arrest the subject of a restraining order only when they have probable cause to believe that the subject committed a crime by violating the order. *See* Section IV, *infra*.

The City has shown an absence of evidence to support Mr. Herron's allegations of the City's failure to train its officers amounting to "deliberate indifference to the rights of persons with whom [they] come into contact." *Connick*, 131 S. Ct. at 1359 (quotation marks omitted). In response, Mr. Herron fails to point to any evidence to support that claim. He has thus failed to

show a genuine issue of material fact for trial. The Court GRANTS summary judgment for the City on Mr. Herron's § 1983 supervisory liability claim.

## IV. FEDERAL CONSTITUTIONAL CLAIMS BASED ON WASHINGTON'S MISDEMEANOR-ARREST STATUTE

Washington's misdemeanor-arrest statute allows "[a] police officer [to] arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer," subject to ten exceptions. Wash. Rev. Code § 10.31.100. In his complaint, Mr. Herron alleges that, even if Officer Scanlon had probable cause to believe Mr. Herron had committed a gross misdemeanor, he was not authorized under Washington's misdemeanor-arrest statute to arrest him because Mr. Herron had not committed the ostensible misdemeanor in Officer Scanlon's presence—and that this statutorily unauthorized arrest somehow rose to the level of a federal constitutional violation. (Dkt. No. 1 at 4–6 ¶¶ 5.4, 6.7–6.8.) But a state-law "requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990); *United States v. Becerra-Garcia*, 397 F.3d 1167, 1173 (9th Cir. 2005) ("the reasonableness of a seizure depends exclusively on federal law"); *Atwater v. City of Lago Vista*, 532 U.S. 318, 341 n.11 (2001). Thus, assuming that Officer Scanlon *did* have probable cause to believe that Mr. Herron had committed a gross misdemeanor, his "presence when the [assumed] misdemeanor was committed is [ir]relevant to [Mr. Herron's] constitutional claim." *Barry*, 902 F.2d at 772. The Court thus GRANTS summary judgment for Defendants on Mr. Herron's claims that they violated his constitutional rights by violating Washington's misdemeanor-arrest statute (or, in the City's case, by failing to train its officers on that statute).

## V. NEGLIGENCE CLAIM

In his third cause of action, for negligence, Mr. Herron alleges that Defendants "breached a duty of care owed to [Mr. Herron] by negligently arresting and imprisoning him without a

ORDER GRANTING SUMMARY JUDGMENT
FOR DEFENDANTS
PAGE - 12

warrant, probable cause or statutory authority." (Dkt. No. 1 at 6 ¶ 7.2.) "In all negligence actions the plaintiff must prove the defendant owed the plaintiff a duty of care." *Donaldson v. City of Seattle*, 831 P.2d 1098, 1101 (Wash. Ct. App. 1992). Under the "public duty" doctrine, "[g]enerally, no liability will attach for a public official's negligent conduct unless the plaintiff can show that the duty was owed to her rather than to the general public." *Id.* (citing *Taylor v. Stevens County*, 759 P.2d 447, 449–50 (Wash. 1988)). Defendants argue that the public duty doctrine precludes a finding of Defendants' liability for any negligent acts of Officer Scanlon's. Mr. Herron fails to respond to this argument, which the Court interprets as an admission that it has merit. *See* Local Civ. R. W.D. Wash. 7(b)(2). The Court sees no reason why the public duty doctrine would not apply here: Mr. Herron has identified no duty that Defendants owed to him specifically (or as a member of a class), rather than to the general public. *See, e.g.*, *James v. City of Seattle*, No. C10–1612JLR, 2011 WL 6150567, at *15 (W.D. Wash. Dec. 21, 2011) (invoking public duty doctrine to grant summary judgment for defendant police officers on plaintiff's excessive-force negligence claim because "while it is true that the officers owe a general duty to all citizens of the City to avoid the use of excessive force when effectuating an arrest, it cannot be said that they owe the plaintiff a specific duty") (quotation marks and indications of alteration omitted). Nor do any of the exceptions to the public duty doctrine appear to apply here. *See Munich v. Skagit Emergency Commc'n Ctr.*, 288 P.3d 328, 332 (Wash. 2012). Accordingly, the Court GRANTS summary judgment for Defendants on Mr. Herron's negligence claim.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment (Dkt. No. 12), DENIES Mr. Herron's motion for summary judgment (Dkt. No. 24), and DISMISSES this case with prejudice.

//

//

//

1   DATED this 18th day of July 2013.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING SUMMARY JUDGMENT
FOR DEFENDANTS
PAGE - 14